Jason L. Solotaroff (JS-5739)
GISKAN SOLOTAROFF ANDERSON & STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
(212) 847-8315

Attorneys for Plaintiff



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JEFFREY LEVIN and CORPORATE
RECOVERY SERVICE LLC,

          Plaintiffs,

          v.

ZURICH FINANCIAL SERVICES and
FARMERS INSURANCE GROUP,

          Defendants.

------------------------------------------------------------x

Civ.

**COMPLAINT**

Jury Trial Demanded

## JURISDICTION AND VENUE

1. This Complaint is filed and these proceedings are instituted under the diversity jurisdiction of this Court, 28 U.S.C. §1332, as the matter in controversy exceeds $75,000 and the parties are citizens of different states.

2. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a) in that all Defendants reside in this district and a substantial part of the events giving rise to the claim occurred in this district.

## THE PARTIES

3. Plaintiff, Jeffrey Levin, is domiciled in New Jersey. He is the President of Corporate Recovery Services LLC, which is incorporated and has its principal place of business in New Jersey.

4. Defendant Zurich Financial Services ("Zurich") is a Swiss corporation with its principal place of business in Zurich, Switzerland. Zurich has an office at 1 Liberty Plaza, New York, New York.

5. Defendant Farmers Group, Inc. ("Farmers") is a Nevada corporation with its principal place of business in Los Angeles, California. It is a wholly owned subsidiary of Defendant Zurich. Farmers writes insurance policies and has insurance agents throughout the State of New York, including in New York City.

## THE FACTS

6. In April 2005, Defendant Farmers entered into an agreement ("the American Express Agreement") with American Express Tax and Business Services Inc. ("American Express"), a corporation headquartered in New York City, under which American Express would perform a Contract Compliance Audit to determine whether Farmers had overpaid certain of its vendors. The American Express Agreement indicated that American Express would be paid on a contingent basis by receiving 40 percent of any recoveries obtained by Farmers as a result of the audit. "Recoveries" was defined as including "cash payments, credits, deferred credits, or reductions in future fees."

7. It is typical in the relevant industry that contract compliance and accounts payable auditors are compensated on a contingent basis. Farmers has entered into contingent arrangements with other accounts payable auditors.

8. In August 2005, the American Express Agreement was amended to provide that American Express would also audit overpayments to vendors by Farmers' corporate parent, Zurich, and that American Express would receive a lower contingency fee – "35% of the initial $2,000,000 of cumulative realized recoveries, and 40% of all cumulative realized recoveries which exceed $2,000,000."

9. Plaintiff Levin was assigned by American Express to perform the Contract Compliance Audits for Farmers and Zurich. Plaintiff Levin is an auditor with 18 years' experience analyzing procurement contracts.

10. On August 1, 2005, American Express announced that it would sell the Tax and Business Services unit to RSM McGladrey Inc. ("McGladrey"), effective October 1, 2005. Plaintiff Levin became an employee of McGladrey. American Express also assigned the American Express Agreement to McGladrey.

11. On that date, Robert Ryan, Mr. Levin's supervisor, informed Terry McCafferty, who was then the Vice President of Finance at Farmers, of the sale to McGladrey. On August 2, 2005, Mr. McCafferty requested that McGladrey continue to provide the services for Farmers and Zurich specified in the American Express Agreement.

12. In January 2006, McGladrey announced that it was divesting itself of the Recovery Services group, which had been performing the Contract Compliance Audits for

3

Defendants under the American Express Agreement, and of which Plaintiff was a part, and that it was terminating the employment of the employees assigned to that group.

13. McGladrey, however, offered those employees, including Plaintiff Levin, the opportunity to continue working for the clients of McGladrey under existing agreements between McGladrey and those clients. To that end, McGladrey provided Plaintiff Levin with an addendum to his employment agreement. The addendum provided that McGladrey released any claims to revenue generated by Plaintiff Levin pursuant to the American Express Agreement after March 31, 2006.

14. In January 2006, Mr. Ryan notified Mr. McCafferty of Farmers of McGladrey's divestiture of the Recovery Services group and offered to continue the audits under the same terms as contained in the American Express Agreement. Mr. McCafferty directed Mr. Levin to continue working on the audits, and to coordinate and work with Mr. Michael Kinder of Zurich and Mr. Greg Spurlock of Farmers.

15. In January 2006, Mr. Levin established Corporate Recovery Services LLC to provide services to Farmers/Zurich.

16. On April 10, 2006, Mr. Levin visited Zurich's offices in Schaumberg, Illinois to meet with Michael Kinder, Zurich's Assistant Vice-President of Procurement and Corporate Services, who had taken over responsibility for the Contract Compliance Audit from Mr. McCafferty. Mr. Kinder asked Mr. Levin to continue his work and represented that Mr. Levin would be paid pursuant to the terms of the American Express Agreement.

17. Mr. Levin continued his work for Farmers/Zurich. Mr. Levin's work involved

validation of previously paid invoices to determine whether the invoices were billed in accordance with the terms of the agreements between Farmers/Zurich and selected vendors. In order to complete this analysis, Mr. Levin collected numerous data tables from each of the suppliers as well as data from Farmers/Zurich to determine if the vendors' invoices were valid and whether Farmers/Zurich had paid invalid invoices.

18. Mr. Levin audited payments by Zurich/Farmers to three vendors: Corporate Express, Spherion and DHL. As a result of these audits, Mr. Levin identified the following amounts in overpayments and future savings for each vendor:

| Vendors | Errors Identified | 2007 Savings | Overall Savings |
|---|---|---|---|
| Spherion | $7,076,707.36 | $2,200,000.00 | $9,276,707.36 |
| DHL | $1,396,527.94 | $2,500,000.00 | $3,896,527.94 |
| Corporate Express | $2,000,777.04 | $750,000.00 | $2,750,777.04 |
| **Total Billable Amount** | | | $15,924,012.34 |

19. Following Mr. Levin's presentation of his conclusions to Mr. Kinder and others at Farmers/Zurich, Mr. Kinder and Mr. Spurlock told Mr. Levin that Farmers/Zurich had elected not to pursue collection of the overpayments from Spherion. They did inform Mr. Levin that Mr. Levin's report had been reviewed by Zurich's legal counsel and that Zurich's legal counsel had verified that Mr. Levin had accurately identified invalid invoices and overpayments between Farmers/Zurich and its suppliers.

20. On information and belief, Defendants did realize recoveries, as defined by the American Express Agreement, from the vendors audited by Mr. Levin based on the existing or future overpayments he identified.

21.  Plaintiffs have made multiple demands to Defendants for the payments due them for the services provided. Defendants have failed to make any of the payment due to Plaintiffs.

## FIRST CLAIM FOR RELIEF

(Breach of Contract–American Express Agreement)

22.  Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

23.  Defendants entered into the American Express Agreement, under which American Express agreed to audit payments made by Defendants to certain of its vendors. Defendants agreed to pay American Express a specified percentage of any recovery it obtained from a vendor as a result of the audits.

24.  American Express assigned its rights and delegated its duties under the American Express Agreement to McGladrey, and McGladrey, in turn, assigned its rights and delegated its duties under the American Express Agreement to Plaintiffs.

25.  Defendants consented to the delegation of duties under the American Express Agreement between American Express and McGladrey and between McGladrey and Plaintiffs.

26.  American Express, McGladrey and/or Plaintiffs performed all of American Express' obligations under the American Express Agreement.

27.  Defendants have breached the American Express Agreement by failing to pay the contingency fees due thereunder and thereby causing damages to Plaintiffs.

## SECOND CLAIM FOR RELIEF

(Breach of Implied Covenant of Good Faith and Fair Dealing – American Express Agreement)

28. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

29. The American Express Agreement contained an implied covenant of good faith and fair dealing. Under that covenant, each party agreed to act in good faith and to refrain from acting in a way that would deprive the other party of its benefits under the agreement.

30. Defendants breached the implied covenant of good faith and fair dealing by failing to attempt to collect recoveries arising from the overpayments identified by American Express, McGladrey and Plaintiffs, thereby causing damages to Plaintiffs.

## THIRD CLAIM FOR RELIEF

(Breach of Corporate Recovery Services Agreement)

31. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

32. In April 2006, Plaintiffs Levin and Corporate Recovery Services offered to provide the services contracted for in the American Express Agreement on the same terms as contained in the American Express Agreement.

33. At that time, Defendants accepted Plaintiffs' offer, thereby creating an enforceable agreement directly between Corporate Recovery Services and Defendants ("Corporate Recovery Services Agreement").

34. Plaintiffs performed all of their obligations under the Corporate Recovery Services Agreement.

35. Defendants breached the Corporate Recovery Services Agreement by failing to make the contingency payments due thereunder.

### FOURTH CLAIM FOR RELIEF
(Breach of Implied Covenant of Good Faith and Fair Dealing –
Corporate Recovery Services Agreement)

36. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

37. The Corporate Recovery Services Agreement contained an implied covenant of good faith and fair dealing. Under that covenant, each party agreed to act in good faith and to refrain from acting in a way that would deprive the other party of its benefits under the agreement.

38. Defendants breached this implied covenant of good faith and fair dealing by failing to attempt to collect recoveries arising from the overpayments identified by Plaintiffs, thereby causing damages to Plaintiffs.

### FIFTH CLAIM FOR RELIEF
(Promissory Estoppel)

39. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

40. In April 2006, Defendants, through their officers, directors or agents, promised Plaintiffs that if they continued their work in performing the Contract Compliance Audits, they would be compensated as provided by the American Express Agreement.

41. Plaintiffs justifiably relied on that promise in providing and continuing to provide services to Defendants.

42. As a result of their reliance, Plaintiffs suffered damages.

## SIXTH CLAIM FOR RELIEF
(Quantum Meruit – Pled in the alternative)

43. Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as if fully set forth herein.

44. Plaintiffs performed the Contract Compliance Audits for Defendants in good faith. Defendants accepted the services and were benefitted by them.

45. Plaintiffs and Defendants both understood and expected that Plaintiffs would be compensated for their services.

46. It would be inequitable for Defendants to retain the benefit provided by Plaintiffs without payment of compensation. Plaintiffs' services are reasonably valued at the contingent amounts set forth in the American Express Agreement.

## SEVENTH CLAIM FOR RELIEF
(Unjust Enrichment – Pled in the alternative)

47. Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

48. Benefits were conferred upon Defendants by the Plaintiffs in the form Contract Compliance Audits which identified past and future overpayments by Defendants to their vendors. On information and belief, Defendants' vendors compensated Defendants for the past overpayments and refrained from overcharging Defendants in the subsequent years. Defendants appreciated those benefits.

49. Retention of those benefits would be inequitable based on Defendants' failure to appropriately compensate Plaintiffs for their work.

50. Accordingly, Defendants will remain unjustly enriched unless they are ordered to disgorge those wrongfully retained benefits.

**WHEREFORE**, Plaintiffs demand judgment:

A. On the First Claim For Relief, awarding Plaintiffs compensatory damages, in an amount to be determined at trial, arising from Defendants' breach of the American Express Agreement;

B. On the Second Claim For Relief, awarding Plaintiffs compensatory damages, in an amount to be determined at trial, arising from Defendants' breach of the implied covenant of good faith and fair dealing contained in the American Express Agreement;

C. On the Third Claim For Relief, awarding Plaintiffs compensatory damages, in an amount to be determined at trial, arising from Defendants' breach of the Corporate Recovery Services Agreement;

D. On the Fourth Claim for Relief, awarding Plaintiffs compensatory damages, in an amount to be determined at trial, arising from Defendants' breach of the implied covenant of good faith and fair dealing contained in the Corporate Recovery Services Agreement;

E. On the Fifth Claim for Relief, awarding Plaintiffs damages arising from Plaintiffs' promissory estoppel claim;

F. On the Sixth Claim for Relief, in the alternative, awarding Plaintiffs the reasonable value of the services provided by Plaintiffs to Defendants;

G. On the Seventh Claim for Relief, in the alternative, disgorgement of Defendants' wrongfully withheld benefits arising from Plaintiffs' services;

H. Awarding reasonable attorneys' fees, costs and expenses;

H.  Granting such other legal and equitable relief as the Court may deem just and equitable.

Dated:  New York, New York
June 30, 2008

GISKAN SOLOTAROFF ANDERSON & STEWART LLP

By: /s/ Jason L. Solotaroff
Jason L. Solotaroff (JS-5739)
11 Broadway, Suite 2150
New York, New York 10004
212-847-8315

ATTORNEYS FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs demand trial by jury of all issues as of right by a jury.

Dated: New York, New York
       June 30 2008

                        GISKAN SOLOTAROFF ANDERSON & STEWART LLP

By:    Jason L. Solotaroff (JS-5789)
       11 Broadway, Suite 2150
       New York, New York 10004
       212-847-8315

       ATTORNEYS FOR PLAINTIFF